UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JAMES WILLIAMS, KIM MORGAN, and MARK MOREHOUSE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>STATE COLLECTION SERVICE, INC.,<br><br>Defendant. | Case No.: 17-cv-532<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff James Williams is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Kim Morgan is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Mark Morehouse is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff a debt allegedly incurred for personal, family or household purposes.

7. Defendant State Collection Service, Inc. ("SCS") is a corporation with its principal place of business located at 2509 S. Stoughton Rd., Madison, WI 53716.

8. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Williams Letter*

10. Plaintiff Williams entered into consumer transactions with "Aurora Adv HC Bay View Clinic," "Aurora St Lukes Medical Center" and "PB Aurora St Lukes Medical Center" or an affiliate or predecessor corporation.

11. Each consumer transaction was incurred for personal medical services.

12. Further, each consumer transaction involved agreements to render services and defer payment. Plaintiff was not expected to pay at the time medical services were rendered, but was billed at a later date. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

2

13. On or about June 3, 2016, SCS mailed a debt collection letter to Plaintiff Williams regarding an alleged debt owed to the creditors listed in Paragraph 10. A copy of this letter is attached to this complaint as Exhibit A.

14. Exhibit A lists the following:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA ADV HC BAY VIEW CLINIC | 8041 | 04/01/15 | $5.00 |
| AURORA ST LUKES MEDICAL CENTER | 8041 | 09/12/15 | $27.00 |
| PB AURORA ST LUKES MEDICAL CENTER | 8041 | 11/20/15 | $537.75 |
| | | Total Amount Due: | $569.75 |

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Exhibit A includes the following language:

> The following is a list of your accounts and their current balances due this department at this time. Be advised, there may be other claims owing in a different department from this same office.

17. Exhibit A is confusing and misleading to the unsophisticated consumer.

18. Exhibit A simultaneously tells the unsophisticated consumer that the "Account Balance" and "Total Amount Due" is $569.75, but then states "There may be other claims owing in a different department from this same office."

## *Morgan Letter*

19. Plaintiff Morgan entered into one or more consumer transactions with "Aurora Sinai Medical Center" and "PB Aurora Sinai Medical Center" or an affiliate or predecessor corporation.

20. Each consumer transaction was incurred for personal medical services.

21. Further, each consumer transaction involved agreements to render services and defer payment. Plaintiff was not expected to pay at the time medical services were rendered, but was billed at a later date. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant

3

sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

22. On or about June 26, 2016, SCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to the creditors listed in Paragraph 23. A copy of this letter is attached to this complaint as Exhibit B.

23. Exhibit B lists the following:

```
Creditors:                              Client Acct #    Service Date   Account Balance:
AURORA SINAI MEDICAL CENTER             0887             06/14/15       $1197.00
PB AURORA SINAI MEDICAL CENTER          0887             06/14/15       $72.05
PB AURORA SINAI MEDICAL CENTER          0887             06/14/15       $172.70
```

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

24. Exhibit B states:

"Amount: $1441.75"

25. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Exhibit B includes the following language:

The account number above is an account number we assigned to an account in our office. You may have more than one account in our office that is the subject of your payment arrangement. There may be other accounts in another department in our office.

27. Exhibit B is confusing and misleading to the unsophisticated consumer.

28. Exhibit B simultaneously tells the unsophisticated consumer an "Account Balance" and states an "Amount" of $1441.75, but then states "There may be other accounts in another department in our office."

### *Morehouse Letter*

4

29. Plaintiff Morehouse entered into one or more consumer transactions with "Lakeshore Medical Clinic Southpointe" and "Aurora West Allis Medical Center" or an affiliate or predecessor corporation.

30. Each consumer transaction was incurred for personal medical services.

31. Further, each consumer transaction involved agreements to render services and defer payment. Plaintiff was not expected to pay at the time medical services were rendered, but was billed at a later date. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

32. On or about August 18, 2016, SCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to the above creditors. A copy of this letter is attached as <u>Exhibit C</u>.

33. Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

34. <u>Exhibit C</u> lists the following:

| Creditors: | Client Acct # | Service Date | Account Balance: |
|---|---|---|---|
| LAKESHORE MEDICAL CLINIC SOUTHPOINTE | 0798 | 09/11/15 | $0.00 |
| LAKESHORE MEDICAL CLINIC SOUTHPOINTE | 0798 | 09/11/15 | $75.96 |
| AURORA WEST ALLIS MEDICAL CENTER | 0798 | 12/28/15 | $65.00 |

35. <u>Exhibit C</u> states:

Your payment of $ 140.96 is due 08/25/16.

…

Amount: $ 140.96

5

36. Exhibit C also includes the text:

> The account number above is an account number we assigned to an account in our office. You may have more than one account in our office that is the subject of your payment arrangement. There may be other accounts in another department in our office.

37. Exhibit C is confusing and misleading to the unsophisticated consumer.

38. Exhibit C simultaneously tells the unsophisticated consumer that the "Amount" owed and "payment due" are $140.96, but then states "There may be other accounts in another department in our office."

39. The unsophisticated consumer would have no idea whether payment of the "Account Balance," "Total Amount Due," or "Amount" would satisfy their debt with SCS. It is extremely common for patients to receive multiple bills – for example, from the hospital, and from the physician's group and from the laboratory – from a single visit to a medical provider. It is also very common for those multiple bills to be processed together through the provider's billing department, and if not paid, sent together to the same third party debt collector.

40. Indeed, if there are any additional accounts that SCS is assigned to collect from Plaintiffs, payment of the "Account Balance" would most definitely *not* satisfy the account balance.

41. SCS's conduct is comparable to the conduct in *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, (7th Cir. 2004). In *Chuway*, the debt collector violated the FDCPA by stating a "balance," but also stating: "To obtain your most current balance information, please call [the debt collector]." As in *Chuway*, Exhibit A, Exhibit B and Exhibit C state a balance or amount due and then state that the balance may not actually be the balance. Such conduct violates the FDCPA.

6

42. Additionally, Exhibit C states: "Lakeshore Medical Clinic Southpointe Account Balance: $0.00."

43. An account balance of $0.00 is inherently confusing and ambiguous. Debt collection, by nature, requires an "amount due." A creditor or debt collector billing a consumer to "pay" an account for which there is a $0.00 "amount due" is not a debt. A creditor and/or debt collector has no enforceable right to *anything* from a consumer regarding an account with a zero balance. Contacting a consumer to collect a $0.00 balance is harassment and taking action by sending debt collection letters that cannot legally be taken because, by definition, no debt exists.

44. Alternatively, if a debt does exist and SCS has incorrectly represented the balance to be zero, then SCS has misrepresented the "character, amount, or legal status" of the debt.

45. Plaintiffs were confused by Exhibits A-C.

46. The unsophisticated consumer would be confused by Exhibits A-C.

47. Plaintiffs had to spend time and money investigating Exhibits A-C.

48. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibits A-C.

49. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest

7

that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

50. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

51. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

53. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

8

54. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

55. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Count I is brought on behalf of all Plaintiffs.

57. <u>Exhibit A</u> simultaneously tells the unsophisticated consumer his or her "Account Balance," but then states "There may be other claims owing in a different department from this same office."

58. Likewise, <u>Exhibit B</u> and <u>Exhibit C</u> simultaneously tell the unsophisticated consumer his or her "Account Balance," but then state "There may be other accounts in another department in our office."

59. <u>Exhibits A-C</u> contradict themselves and misrepresent the "character, amount, or legal status" of the alleged debt by implying that the balance listed on <u>Exhibits A-C</u> may not be the actual balance due.

60. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10).

## COUNT II – FDCPA

61. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Count II is brought on behalf of Plaintiff Morehouse.

63. <u>Exhibit A</u> attempts to collect an "Account Balance" of $0.00 from Plaintiff.

64. Exhibit A contradicts itself and misrepresents the "character, amount, or legal status" of the alleged debt by implying that a debt exists when, in fact, a zero balance means no debt exists.

65. Alternatively, if a debt does exist and SCS has incorrectly represented the balance to be zero, then SCS has misrepresented the "character, amount, or legal status" of the debt.

66. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5) and 1692e(10).

## CLASS ALLEGATIONS

67. Plaintiffs bring this action on behalf of two classes.

68. Class One consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A or Exhibit B or Exhibit C to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) between April 13, 2016 and April 13, 2017, inclusive, (e) that was not returned by the postal service. Class One shall be called the "Same Office" class and the designated representatives are Plaintiffs Williams, Morgan and Morehouse.

69. Class Two consists of (a) all natural persons in the State of Wisconsin (b) to whom defendant SCS sent a collection letter stating an Account Balance of $0.00, (c) seeking to collect one or more debts incurred for medical services, (d) between April 13, 2016 and April 13, 2017, inclusive, (f) that was not returned by the postal service. Class Two shall be called the "Zero Account Balance" class and the designated representative is Plaintiff Morehouse.

70. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

71. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

72. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

73. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 13, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000  
(414) 482-8001 (fax)  
sademi@ademilaw.com  
jblythin@ademilaw.com  
meldridge@ademilaw.com  
dmorris@ademilaw.com